Helen M. POEHLMAN, Appellant–
Plaintiff,

v.

Martin E. FEFERMAN, M.D.,
Appellee–Defendant.

Helen M. POEHLMAN, Appellant–
Plaintiff,

v.

Martin E. FEFERMAN, M.D., Physicians Insurance Company of Indiana and Marjorie Maginn Commissioner of Insurance of the State of Indiana, Appellees–Defendants.

No. 71A05–9709–CV–384.

Court of Appeals of Indiana.

April 27, 1998.

---

F. Boyd Hovde, Regina M. Poore, Hovde Law Firm, Indianapolis, for Appellant–Plaintiff.

Matthew w. Conner, Tabbert Hahn Earnest Weddle & Starkey, P.C., Indianapolis, for Appellees–Defendants.

## OPINION

GARRARD, Judge

Helen Poehlman ("Poehlman") appeals the judgment in her declaratory action against Dr. Martin Feferman ("Feferman"), Physicians Insurance Company of Indiana ("PICI"), and Marjorie Maginn as Commis-

sioner of Insurance ("Commissioner"), claiming that the trial court erred when it ruled that she was not entitled to post-judgment interest on her medical malpractice judgment against Feferman.

We reverse in part, affirm in part, and remand.

## FACTS

On April 4, 1996, Poehlman received a judgment in the amount of $345,263 plus costs against Feferman for medical malpractice. At that time, Feferman was insured for medical malpractice by PICI. On August 30, 1996, PICI paid, on behalf of Feferman, $103,733.09 to the St. Joseph County Clerk to satisfy the portion of the judgment that Feferman owed under the Medical Malpractice Act ("Act"). This sum consisted of the $100,000 that Feferman owed under Indiana Code § 27–12–14–3(b) plus $3,331.84 in interest and $401.25 in costs. Subsequently, Feferman filed a petition to appoint a commissioner to release the judgment.

Poehlman filed suit against Feferman, PICI, and the Commissioner on October 15, 1996, seeking a declaratory judgment stating that post-judgment interest was due pursuant to Indiana Code § 24–4.6–1–101. The trial court eventually consolidated Poehlman's declaratory action with Feferman's petition for appointment of a commissioner to release the judgment. On December 4, 1996, by a stipulation of the parties, the St. Joseph County Clerk released $100,000 of the money paid by PICI, on behalf of Feferman, to Poehlman. The stipulation left unresolved, however, the amount of post-judgment interest, if any, that Feferman owed on the judgment. One month later, the Commissioner paid $245,263 to Poehlman. This sum represented the unpaid balance of Poehlman's judgment against Feferman, but did not include post-judgment interest or costs.

After the parties submitted written briefs on the issue of post-judgment interest, the trial court ruled that Poehlman was not entitled to post-judgment interest from any of the three defendants. The trial court, therefore, ruled that Feferman owed the $100,000 already paid plus $401.25 in costs and that the Commissioner was not required to pay any additional amount. Believing its declaratory judgment to have resolved the issue of the release of judgment, the trial court deferred ruling on Feferman's petition to appoint a commissioner to release judgment. Poehlman appeals the trial court's judgment. Feferman cross-appeals the assessment of the $401.25 in costs and the trial court's failure to rule on his petition.

## ISSUES

Poehlman raises three issues on appeal which we consolidate and restate as:

I.   Whether the trial court erred by ruling that she was not entitled to post-judgment interest.

Feferman and PICI raise two cross-appeal issues which we restate as:

I.   Whether the trial court erred by ordering Feferman to pay $401.25 in costs in addition to the $100,000.

II.  Whether the trial court erred by not ordering the appointment of a commissioner to release the judgment held by Poehlman.

## DISCUSSION

### I. Poehlman's Appeal

Poehlman's declaratory suit asked the trial court to determine whether Indiana Code § 24–4.6–1–101 ("Post–Judgment Interest Statute") applied to a judgment paid pursuant to Indiana Code § 27–12–14–3 ("Recovery Limitation Section"). In its judgment, the trial court determined that the Post–Judgment Interest Statute did not apply because it was the more general of the two statutes. *State ex rel. Hatcher v. Lake Superior Court,* 500 N.E.2d 737, 739 (Ind.1986) (specific statute prevails over general statute when the two conflict). The trial court reasoned that the Recovery Limitation Section of the Act was the more specific because it dealt directly with malpractice judgments while the Post–Judgment Interest Statute dealt with all types of judgments.

In our review we are not bound by the trial court's interpretation of these two statutes. *Olejniczak v. Town of Kouts,* 651

N.E.2d 1197, 1199 (Ind.Ct.App.1995), *trans. denied.* Rather, we must independently determine the meaning of the statutes and their application to the facts before us. *Id.* "For a specific statute to prevail over or modify a general statute, there must be a conflict in the two statute's [sic] application to the *same subject matter.*" *Wayne Township v. Lutheran Hospital,* 160 Ind.App. 427, 312 N.E.2d 120, 124 (1974) (emphasis added). We do not agree with the trial court's determination that the two statutes covered the same subject matter. The subject matter at issue in the declaratory action was post-judgment interest. The Post–Judgment Interest Statute deals with interest owed on a money judgment. In contrast, the Recovery Limitation Section details the amount that can be recovered for medical malpractice for injury or death of a patient and discusses how much of this amount the health care provider and the patient's compensation fund ("Fund") must pay. Post-judgment interest is not expressly provided for or prohibited by the Recovery Limitation Section. The two statutes, therefore, do not apply to the same subject matter. Because there was not a conflict between the two statutes' application to the same subject matter, the trial court erred in ruling that the Recovery Limitation Section, as the more specific statute, prevailed.

■ "When construing a statute, we must give words and phrases their plain, ordinary and usual meaning, unless a contrary purpose is clearly shown by the statute itself." *Olejniczak,* 651 N.E.2d at 1199. Under its plain meaning, the Recovery Limitation Section does not prohibit a successful plaintiff from recovering post-judgment interest on a medical malpractice judgment. As discussed above, the section does not mention interest at all. Because the Recovery Limitation Section does not discuss post-judgment interest, we must look to the Post–Judgment Interest Statute to determine whether Poehlman is entitled to the claimed interest.

Poehlman claims that the clear and unambiguous language of the Post–Judgment Interest Statute provides for interest unless another statute explicitly provides for a different rate of interest or precludes interest. *See, e.g., Glick v. Dept. of Commerce,* 180 Ind.App. 12, 387 N.E.2d 74 (1979) where Tort Claims Act interest provision takes precedence. "When a statute is clear and unambiguous, there is no need to apply any rules of construction other than that requiring words and phrases to be taken in their plain, ordinary, and usual sense." *Benham v. State,* 637 N.E.2d 133, 136 (Ind.1994). Because we find that the Post–Judgment Interest Statute is clear and unambiguous, we may not impose judicial construction upon the clear meaning of the words. *Id.*

Feferman, PICI, and the Commissioner all argue that the trial court correctly declined to apply the Post–Judgment Interest Statute. To support this argument, the parties contend that had the legislature intended interest to be included in a medical malpractice judgment, the legislature would have expressly provided for interest as it did in the Tort Claims Act. In addition, the parties claim that the Act's policy is to limit the liability of health care providers and that applying the Post–Judgment Interest Statute would contravene this policy. In sum, the parties argue that the Act precludes the imposition of post-judgment interest on medical malpractice judgments. We do not agree.

Indiana Code § 24–4.6–1–101 provides in relevant part: "Except as otherwise provided by statute, interest on judgments for money whenever rendered shall be from the date of return of the verdict or finding of the court until satisfaction at:...." This section also sets the maximum rate of interest at 8% when a contract for interest exists, and sets the rate at 8% when no contract exists. The Recovery Limitation Section does not discuss post-judgment interest. Instead, the section provides in relevant part:

(a) The total amount recoverable for an injury or death of a patient may not exceed five hundred thousand dollars ($500,000) except that, as to an act of malpractice that occurs on or after January 1, 1990, the total amount recovered for an injury or death may not exceed seven hundred fifty thousand dollars ($750,000).

(b) A health care provider qualified under this article is not liable for an amount in

excess of one hundred thousand dollars ($100,000) for an occurrence of malpractice.

(c) Any amount due from a judgment or settlement that is in excess of the total liability of all liable health care providers, subject to subsections (a), (b), and (d), shall be paid from the patient's compensation fund under IC 27–12–15.

IND.CODE § 27–12–14–3(a–c). Under the plain language of the Post–Judgment Interest Statute, Poehlman is entitled to post-judgment interest unless the Recovery Limitation Section provides otherwise. IND.CODE § 24–4.6–1–101. The Recovery Limitation Section is simply silent on the topic of post-judgment interest. Thus, looking only to the plain, ordinary, and usual sense of the words and phrases in the statutes, the Post–Judgment Interest Statute applies. *Benham,* 637 N.E.2d at 136.

The trial court, therefore, erred in ruling that Poehlman was not entitled to post-judgment interest.

We must next decide whether the liability limits specified in the Recovery Limitation Section apply to the post-judgment interest owed to Poehlman. Poehlman argues that the liability limits do not apply to the interest and that Feferman is liable for the interest on the entire judgment. In the alternative, Poehlman contends that if Feferman's liability is capped at $100,000, the Fund should be required to pay the post-judgment interest. Feferman and PICI argue that the liability limitation in the Recovery Limitation Section is an absolute cap on all liability including interest. Agreeing with Poehlman's alternative argument, Feferman and PICI contend that the Fund should pay the post-judgment interest. The Commissioner argues that Feferman is liable for all the interest due and that the only amount the Fund is liable to pay is the amount in excess of the health care provider's liability. Because Feferman's liability for the post-judgment interest is not limited, the Commissioner reasons that there is no excess that the Fund is required to pay.

Alternatively, the Commissioner claims that post-judgment interest is not an "amount in excess" of the health care provider's liability. In essence, the Commissioner's alternative argument claims that post-judgment interest is not part of damages awarded for an occurrence of medical malpractice.

■ We must first decide whether Feferman can be required to pay any amount of interest above the $100,000 cap set by the Recovery Limitation Section. Indiana Code § 27–12–14–3(b) states that Feferman is not liable for "an amount in excess of" $100,000. This means that Feferman "cannot be liable in a medical malpractice action for an amount greater than $100,000." *Rimert v. Mortell,* 680 N.E.2d 867, 870 (Ind.Ct.App.1997), *trans. denied.* The Recovery Limitation Section does not qualify the term "amount" to include only certain types of damages, costs, fees, or interest within the liability limitation. The plain language of the section sets a solid liability cap without any qualification. We hold that a qualified health care provider under the Act is not liable for *any* amount in excess of $100,000, including post-judgment interest. Had the medical malpractice judgment against Feferman been for less than $100,000, Feferman would have been liable for that amount plus the post-judgment interest up to the liability limit of $100,000.[1]

Thus, we turn to whether the Fund is required to pay the post-judgment interest in excess of Feferman's liability limit. The Commissioner argues that the Fund is not required to pay the post-judgment interest because the Recovery Limitation Section does not explicitly provide for interest. Alternatively, the Commissioner argues that the Fund is only responsible for the interest incurred on the amount in excess of $100,000, rather than the whole judgment. In contrast, Poehlman, Feferman, and PICI argue that the Fund is required to pay any amount in excess of $100,000 that remains to be paid, including any post-judgment interest. They contend that post-judgment interest should be levied upon the entire judgment and

---

1. The Commissioner claims that under PICI's medical malpractice insurance policy with Feferman, Feferman, through PICI, agreed to pay all the interest on the full judgment. Because we find that Feferman's liability is capped at $100,000 by the Recovery Limitation Section, we need not discuss the Commissioner's insurance claim.

where, as here, the $100,000 paid by the health care provider does not cover any amount of the interest, the Fund is liable for all the post-judgment interest as well.

Indiana Code § 27–12–14–3(c) provides: "Any amount due from a judgment or settlement that is in excess of the total liability of all liable health care providers, subject to subsections (a), (b), and (d), shall be paid from the patient's compensation fund under IC 27–12–15." Is post-judgment interest "[a]ny amount due from a judgment?" The obligation to pay post-judgment interest stems from the obligation to pay the judgment. Because the obligation to pay post-judgment interest arises out of the obligation to pay the judgment, we hold that post-judgment interest is an amount due from the judgment. Post-judgment interest is, therefore, an amount due that the Fund may be required to pay.

The next question is whether the Fund is required to pay the post-judgment interest on the entire amount of the judgment or whether the Fund is only required to pay post-judgment interest on the amount of the judgment, exclusive of interest, in excess of $100,000. The Recovery Limitation Section states that the Fund will pay any amount in excess of the total liability of all the liable health care providers. In the present case, this means that the Fund is required to pay any amount in excess of $100,000. This section does not limit the phrase "any amount" to just the principal judgment. By acting to pay any amount in excess of the health care provider's liability, the Fund acts in the health care provider's stead in an effort to prevent malpractice judgments and insurance rates from driving qualified health care providers out of state. *See Winona Memorial Foundation v. Lomax*, 465 N.E.2d 731, 739 (Ind.Ct.App.1984). Thus, the Fund steps in to assume the remaining liability of the health care provider. The health care provider's liability, and thus the Fund's, includes the post-judgment interest on the *entire judgment*, not just that amount over the liability limit. Where, as here, none of the interest on the entire judgment has been paid by the health care provider, the Fund is liable for the post-judgment interest on the entire judgment. We note that like the liability limit for the health care provider, the $750,000 total liability limit is a solid cap on the Fund's liability. IND.CODE § 27–12–14–3(a). The Fund is not required to pay any amount over the total liability limit of $750,000. In the present case, the Fund is required to pay the amount of the judgment that exceeds $100,000 ($245,263) plus the unpaid post-judgment interest on the entire judgment.

## II. Cross–Appeal

In their cross-appeal, Feferman and PICI first claim that the trial court erred in its declaratory judgment by ordering Feferman to pay $401.25 in costs in addition to the $100,000. Poehlman argues that Feferman and PICI waived this issue by not appealing the award of costs in the original medical malpractice judgment. Feferman and PICI respond that they are not challenging the correctness of the award of costs, but simply challenge the trial court's order in the declaratory judgment that Feferman pay an amount above the liability limit set forth in the Recovery Limitation Section.

Under Indiana Trial Rule 59(G), when an opposing party files a praecipe with the trial court, a party may raise any grounds as cross-errors in its appellate brief. Because Feferman and PICI are challenging the declaratory judgment, they may raise this issue in their appellee's brief. Ind.Trial Rule 59(G). As discussed above, the liability limitation of $100,000 for Feferman is a solid cap. IND.CODE § 27–12–14–3(b); *Rimert*, 680 N.E.2d at 870. Though the parties do not dispute that the trial court could award costs as part of the malpractice judgment, the Recovery Limitation Section precluded the trial court from ordering Feferman to pay an amount in excess of $100,000. The trial court, therefore, erred by ordering Feferman to pay an amount over the liability limit set by the Recovery Limitation Section. We do note, however, that the $401.25 in costs is an amount in excess of $100,000 and the Fund is, therefore, required to pay this amount as well. IND.CODE § 27–12–14–3(c).

Finally, Feferman and PICI argue that the trial court erred when it deferred ruling on their petition to appoint a commissioner to release the judgment against them. Relying upon Indiana Code §§ 32–8–1–1 and 32–8–1–2, Feferman and PICI claim that because PICI paid the full amount of its liability to the St. Joseph County Clerk, the trial court should have appointed a commissioner to release the judgment. Poehlman argues that Feferman and PICI cannot show that the full amount had been paid at the time the trial court reviewed the petition because Poehlman claimed that Feferman and PICI owed interest above and beyond the amount paid to the St. Joseph County Clerk. We agree.

Indiana Code § 32–8–1–1 requires any person holding a judgment to release that judgment when the judgment, including the interest thereon, has been fully paid. Indiana Code § 32–8–1–2 describes the process for demanding release and provides that a party who fails to release a judgment after compliance with this section may forfeit up to $500 and be required to pay reasonable attorney fees and costs. On appeal, to benefit from these statutes, Feferman and PICI are required to show that they owed no money to Poehlman. *Burras v. Canal Const. and Design Co.*, 470 N.E.2d 1362, 1369 (Ind.Ct.App. 1984). At the time that the trial court reviewed Feferman and PICI's petition, Feferman and PICI could not show that they owed no money to Poehlman. Poehlman was claiming that Feferman and PICI owed interest on the full judgment, not just the interest on the $100,000 Feferman had already paid. Because Feferman and PICI could have been required to pay an amount greater than what they tendered to the St. Joseph County Clerk, they cannot show that they owed Poehlman no money. Feferman and PICI have, therefore, failed to carry their burden. *Id.* The trial court did not err in deferring a ruling on Feferman and PICI's petition to appoint a commissioner to release the judgment.

## CONCLUSION

The judgment of the trial court is reversed except its deferral on the petition to appoint a commissioner. We remand to the trial court to determine the amount of post-judgment interest due on the entire judgment, including costs, pursuant to the Post–Judgment Interest Statute.

Reversed in part, affirmed in part, and remanded to determine post-judgment interest.

HOFFMAN and DARDEN, JJ. concur.