IN RE SMITH

[No. 17,354. Filed March 29, 1945.]

.*Hays & Hays,* of Sullivan, and *Stanley E. Stohr,* of Terre Haute, for appellant.

*James A. Emmert,* Attorney General, and *Forrest P. Jones,* Deputy Attorney General, for appellee.

ROYSE, J.—Pursuant to § 61 of the .Indiana Workmen's Compensation Act of 1929, the Industrial Board of Indiana, on its own motion, presents herein a written statement of facts and, based thereon, certifies a question of law to this court for decision and determination. The facts so presented are as follows: "On January 27, 1942, the above named Frank F. Smith, hereinafter called employee, received an injury from an accident arising out of and in the course of his

employment with Walter Bledsoe & Company, herein-
after called employer; that on February 26, 1942, em-
ployee and employer entered into a Form 12 compen-
sation agreement as prescribed by the Industrial Board
of Indiana wherein it was agreed the average weekly
wage of said employee at time of said injury was $30;
that he should receive compensation at the rate of
$16.50 per week during total disability not exceeding
period and amount fixed by law beginning February
4, 1942, and that employer should pay the necessary and
reasonable surgical, medical and hospital expenses of
the employee for the first ninety days after the injury;
that said agreement was approved by the Industrial
Board of Indiana on April 2, 1942; that employee and
employer complied with the terms of said agreement,
including payment by employer to employee of com-
pensation in total amount $82.50 for total disability
of employee resulting from said injury, which total
disability ended March 10, 1942; that employee exe-
cuted his Form 28 receipt evidencing payment by em-
ployer of said total disability compensation for said
period; that thereafter employee and employer dis-
agreed on the question of the amount of permanent
partial impairment employee had sustained to the vision
of his right eye as the result of said injury, and there-
after employee on January 19, 1943, filed his Form 14
application for the review of said agreement-award on
account change in conditions on the ground that said
injury had resulted in a permanent partial impairment;
that said application was set for hearing before the
Industrial Board of Indiana at the courthouse at Terre
Haute, Vigo County, Indiana, July 21, 1943, at nine
o'clock a. m., and employee and employer were duly
notified of the time and place of said hearing; that at
the hearing before the Industrial Board, July 21, 1943,

employee and employer, among other things, stipulated certain facts, which facts for the purposes of the certified question herein set forth are true, as follows: 'That on May 6 and 7, 1943, and July 8 and 9, 1943, the plaintiff (employee) at the request of employer defendant, during that part of the day on each date on which there was a shift of work available for him at his per day wage scale of $7 per day, went to and returned from St. Louis, Missouri, for medical examination relating to the question of permanent partial impairment to the vision of his eye in this case. As to question of defendant's liability for said four days of lost wage incurred under said circumstances the parties submit the facts to the Board for determination, under the law passed by the 1943 Legislature providing that in certain cases the employer should pay wages lost by an injured employee arising out of the employee's compliance with the employer's request that the employee go and be examined for his condition in connection with a compensable injury.' The aforesaid wage scale of $7 per day was the average daily wage of employee in said employment.

"Upon the foregoing facts, and § 27, of the Workmen's Compensation Act of 1929, as amended by the General Assembly of 1943 by an Act known as Engrossed House Bill No. 11, being Chapter 136 of the Acts of 1943, signed by the Governor March 5, 1943, which Act had an emergency clause providing the Act shall be in full force and effect on and after April 1, 1943, the applicable part of said Section 27 being as follows:

'After an injury and during the period of resulting disability or impairment, the employee, if so requested by his employer . . . shall sub-

mit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer . . .; *and if such examination or travel causes any loss of working time on the part of the employee, the employer shall reimburse him for such loss of wages upon the basis of his average daily wage'* (The italicized words contain the pertinent portion of the 1943 amendment).

the Industrial Board of Indiana respectfully certifies for determination the following question of law: I. Would an award that employer shall reimburse employee for $28 for loss of wages May 6 and 7, 1943, and July 8 and 9, 1943, be according to law?"

On the facts submitted to us by the Industrial Board the answer to the question submitted requires a determination of whether the Amendment enacted. by the General Assembly in 1943 is retroactive. In our opinion the Amendment here considered was remedial and procedural. Its purpose is to indemnify the employee from the loss of wages if the employer elects to take advantage of the privilege to require the employee to submit to a medical examination at times and places designated by the employer. While not pertinent to a determination of the question here presented, it is significant to note the 1943 Amendment further required the employer to pay in advance necessary traveling expenses, including the cost of food and lodging to and from the place of examination.

Prior to the enactment of this Amendment the only obligation of the employer was to pay the medical fee for the examination. If the employee for any reason fails to submit to the examination at the time and place designated his right to compensation or to prosecute any proceedings under the Act is suspended. Before the Amendment the Act might be used by an unscrup-

ulous employer to defeat the beneficent purposes of the Workmen's Compensation Act. For example, on the facts submitted in this case, assume the employee was a man of family whose daily wages were sufficient to provide only the bare necessities of life for his family. Upon a dispute arising as to the amount of partial impairment which he suffered, the employer directed such employee to submit himself for examination to a physician in St. Louis, Missouri, which place, under all of the circumstances, might be deemed to be a reasonable place. If the employee did not have funds to pay his expenses he could not go there and all of his rights under the Act would be suspended. In our opinion the Legislature, by enacting the 1943 Amendment, sought to remedy this harsh and inequitable condition. If the employer believed it to be in his interest to require such an examination, the Legislature, by this Amendment, provided he should save harmless from pecuniary loss the employee for loss of wages, etc. occasioned by the examination.

Does such an Act as the Amendment here considered apply retroactively in the absence of an express declaration that it is so intended?

In the case of *The Connecticut Mutual Life Insurance Company* v. *Talbot et al* (1887), 113 Ind. 373, 14 N. E. 586, the Supreme Court, speaking through Judge Mitchell, after referring to the general rule that statutes are to be construed and applied prospectively, at page 378, said:

"The better rule of construction, and the rule peculiarly applicable to remedial statutes, however, is that a statute must be so construed as to make it effect the evident purpose for which it was enacted, *and if the reason of the statute extends to past transactions, as well as to those in the future,* then it will be so applied, although the statute does

not in terms so direct, unless to do so would impair some vested right or violate some constitutional guaranty." (Our emphasis.)

See also *Mayne* v. *The Board of Commissioners of Huntington County* (1889), 123 Ind. 132, 134, 24 N. E. 80; *Southern Indiana Railway Company* v. *Peyton, Administrator* (1901), 157 Ind. 690, 693, 61 N. E. 722; *Hiatt* v. *Howard et al* (1937), 104 Ind. App. 167, 8 N. E. (2d), 136.

In 50 Am. Jur. 505, § 482, it is stated:

"A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability, in respect of transactions or considerations already past. Hence, remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or conformation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes. To the contrary, statutes or amendments pertaining to procedure are generally held to operate retrospectively, where the statute or amendment does not contain language clearly showing a contrary intention. Indeed, in the absence of any savings clause, a new law changing a rule of practice is generally regarded as applicable to all cases then pending. A fortiori, a statute or amendment which furnishes a new remedy, but does not impair or affect any contractual obligations or disturb any vested rights, is applicable to proceedings begun after its passage, though relating to acts done previously thereto. Sometimes, the rule is stated in the form that, when a new statute deals with procedure only, prima facie, it applies to all actions—those which have accrued or are pending and future actions. However, statutes or amendments relating to procedure are not necessarily retrospective in their operation. Such acts are undoubtedly within the general rule

against retrospective construction where the effect of giving them a retroactive operation will be to impair the obligation of contracts or to disturb vested rights, and in such case will not be given a retrospective operation unless there is some language in the statute indicating such a legislative intent. Where the language of a remedial act clearly relating to past transactions is broad enough to extend to like cases in the future, it will be construed to operate prospectively also if a contrary intent is not manifest."

Certainly it cannot be seriously contended the reason which prompted the Legislature to enact the Amendment here considered should not extend to past transactions as well as to those of the future.

The statute under consideration is remedial and procedural and infringes no vested right of the employer.

Therefore, on the facts submitted to us, the answer to the question propounded by the Industrial Board is: "Yes".

NOTE.—Reported in 60 N. E. (2d) 147.