Pansy J. THORPE, Plaintiff-Respondent,

v.

Robert G. THORPE, Defendant-Appellant.

Court of Appeals

*No. 83–501. Submitted on briefs September 24, 1984.—
Decided March 5, 1985.*
(Also reported in 367 N.W.2d 233.)

---

[7] *See Saunders v. National Dairy Prod. Corp.*, 39 Wis. 2d 575, 583, 159 N.W.2d 603, 607 (1968).

For the appellant there were briefs by *Brennan, Steil, Ryan, Basting & MacDougall, S.C., James E. Welker* and *William O. Salen* of Janesville.

For the respondent there were briefs by *Hansen, Eggers, Berres, Kelley & Blakely, S.C.,* and *Larry J. Eggers* of Beloit.

Before Cane, P.J., Dean and Brown, JJ.

CANE, P.J.   Robert Thorpe appeals an order requiring him to pay twenty-five percent of his retirement pay to his ex-wife, Pansy, beginning July, 1981. The Thorpes' 1977 judgment of divorce awarded Pansy twenty-five percent of Robert's military pension proceeds "as they are paid." The circuit court set aside the award pursuant to the June 26, 1981, decision of *McCarty v. McCarty,* 453 U.S. 210 (1981), but later reinstated the award under the 1982 Uniform Services Former Spouses Protection Act, 10 U.S.C. § 1408 (c) (1) (1983).

Robert argues that the circuit court lacked authority to modify the property portion of the divorce judgment.

He also argues that the 1977 judgment entitles Pansy only to an amount equal to twenty-five percent of his pension payment at the time of the divorce, $202.50 per month. Finally, he argues that the court erred by ordering him to pay retroactive to July, 1981, and not beginning February 8, 1983, the date the award was reinstated. Because the property division may be modified under sec. 806.07, Stats., because the judgment unambiguously requires Robert to pay Pansy twenty-five percent of his pension payment including increases, and because the Uniform Services Former Spouses Protection Act applies to pre-*McCarty* divorce judgments, we affirm.

The circuit court had authority to modify the property division under sec. 806.07. Although a property division is not subject to the court's continuing jurisdiction and may not be modified based on a change of circumstances under sec. 767.32(1), Stats., sec. 806.07 gives the court discretionary authority to grant relief from the judgment. *See Conrad v. Conrad,* 92 Wis. 2d 407, 413, 284 N.W.2d 674, 677 (1979); *see also Tozer v. Tozer,* 121 Wis. 2d 187, 189, 358 N.W.2d 537, 539 (Ct. App. 1984). The subsequent change in the law regarding military pensions provided a basis for the exercise of the court's discretion.

Pansy is entitled to twenty-five percent of Robert's monthly pension payment, including periodic increases. The Thorpes were married in 1954. At the time of the 1977 divorce, Robert was receiving military retirement pay. Robert argues that Pansy is not entitled to a twenty-five percent share of any increases in his pension. He contends that she is limited to $202.50 per month. If this were true, there would have been no reason to express the amount owed to Pansy as a percentage of the proceeds as they are paid. The $202.50 mentioned

in the property division only established the initial amount Robert was to pay.

The most difficult issue involves Robert's argument that the circuit court erred by ordering pension payments retroactive to July, 1981. Robert stopped paying after the June 26, 1981, *McCarty* decision. *McCarty* held that state courts lack jurisdiction to divide nondisability military retirement pay. In October, 1981, the circuit court concluded that *McCarty* rendered the division of Robert's military pension improper, thereby sanctioning his termination of payments.

Congress reversed *McCarty* by enacting the Uniform Services Former Spouses Protection Act. The Act restored the power of state courts to divide pension benefits. 10 U.S.C. § 1408(c)(1) (1983). Under the Act, the circuit court can treat retirement pay received after June 25, 1981, as Robert's sole property or as property of Robert and Pansy. *See id.*

The Act does not specifically address its affect on court orders finalized before *McCarty* and later modified to implement the *McCarty* holding. The Act's legislative history, however, is helpful. *See* 1982 U.S. Code Cong. & Ad. News 1570, 1573. According to the legislative history, the drafters intended to allow a divorce court to erase a modification setting aside a pre-*McCarty* division of military pay. "The purpose of . . . [§ 1408(c)(1) was] to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision" regarding the treatment of nondisability military retirement pay. S. Rep. No. 502, 97th Cong., 2d Sess. 16 (1982), *reprinted in* 1982 U.S. Code Cong. & Ad. News 1596, 1611. The drafters intended to return to the courts the power to divide military pensions retroactive to June 25, 1981. *Id.*

The question remains whether it is constitutional to retroactively apply the Act. Robert argues that the

retroactive application of the Act unconstitutionally deprives him of vested property rights in his military retirement pay. A statute may be retroactively applied if it is a remedial statute that cures defects or furthers a remedy. *Mosing v. Hagen*, 33 Wis. 2d 636, 641, 148 N.W.2d 93, 96 (1967). The Act permits state courts to remedy *McCarty's* harsh result to former spouses and, as a remedial statute, it may be retroactively applied.

*By the Court.*—Order affirmed.