William V. ARTHUR, Appellant (Respondent),

v.

Joanne M. ARTHUR, Appellee (Petitioner).

No. 49A02–8610–CV–382.

Court of Appeals of Indiana, Second District.

Feb. 18, 1988.

Rehearing Denied May 4, 1988.

Alex R. Voils, Jr., Indianapolis, for appellant.

Charles Blackwelder, Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-respondent William V. Arthur (William) appeals the trial court's judgment

awarding forty percent of his military pension to his wife, appellee-petitioner Joanne M. Arthur (Joanne), as part of the property distribution in the dissolution of their marriage, claiming Ind.Code 31–1–11.5–2(d) (Supp.1987) (effective September 1, 1985) should not have been applied retroactively.

We reverse.

## FACTS

The facts are undisputed. William and Joanne were married on April 30, 1955. On July 31, 1975, William retired from the United States Army with fully vested rights for military retirement pay. In 1984, William petitioned for dissolution of the marriage. The marriage was dissolved in 1985 and matters pertaining to custody, child support, maintenance, and property disposition were finally determined in 1986 by the trial court. Joanne was awarded forty percent of William's military retirement pay.

## ISSUE

William presents one issue for review: Did the trial court err in retroactively applying IC 31–1–11.5–2(d) by awarding forty percent of William's military retirement pay to Joanne?

## DECISION

PARTIES' CONTENTIONS—William contends the trial court erred in its retroactive application of IC 31–1–11.5–2(d)(3) which he alleges expands the definition of property to include the right to receive military retirement benefits acquired during the marriage that are or may be payable after the dissolution of the marriage.

Joanne responds that the trial court properly applied IC 31–1–11.5–2(d)(3) because the application of the statute was necessary to carry out the purpose and intent of the law and provided a new remedy to an existing right.

The parties assume that IC 31–1–11.5–2(d) became effective after the "marital pot" was fixed by virtue of the filing of William's dissolution petition in 1984, an assumption with which we are in accord.

See Hunter v. Hunter (1986), Ind.App., 498 N.E.2d 1278; IC 31–1–11.5–11(a) and (b).

Whether IC 31–1–11.5–2(d)(3) can be applied retroactively is critical then in this case because distribution of military retirement benefits was not permitted until the enactment of this statute in 1985.

CONCLUSION—The trial court erred in applying IC 31–1–11.5–2(d)(3) retroactively.

Ordinarily an amendatory act is applied prospectively, rather than retroactively, in the absence of a clear legislative intent to give the statute retroactive operation. *Bailey v. Menzie* (1987), Ind.App., 505 N.E.2d 126; *Davis v. State* (1984), Ind.App., 464 N.E.2d 926; *McGill v. Muddy Fork of Silver Creek Watershed Conservancy Dist.* (1977), 175 Ind.App. 48, 370 N.E.2d 365. A statute is not given retroactive construction when it imposes liabilities not existing at the time of its passage. *Stewart v. Marson Constr. Corp.* (1963), 244 Ind. 134, 191 N.E.2d 320. Prospective operation is favored when rights or obligations are created or upset by amendatory legislation. *McGill, supra.* Retroactive application is the exception; laws are applied prospectively absent strong and compelling reasons. *Gosnell v. Indiana Soft Water Serv.* (1987), Ind., 503 N.E.2d 879; *State ex rel. Uzelac v. Lake Criminal Court* (1965), 247 Ind. 87, 212 N.E.2d 21.

The question of whether a law applies retrospectively is one of statutory construction. *United States v. Kimberlin* (7th Cir. 1985), 776 F.2d 1344, *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697. To determine the intention of the legislature, we will examine the statute, the circumstances under which it was enacted, and contemporaneous legislative history. *W.H. Dreves, Inc. v. Oslo School Township* (1940), 217 Ind. 388, 28 N.E.2d 252; *see also Wright v. Fowler* (1984), Ind.App., 459 N.E.2d 386. In ascertaining such intent, courts observe a strict rule of construction against retrospective operation, and indulge in the presumption that the legislature intended statutes and amendments to operate prospectively only, unless the intention is unequivocally and unambiguously shown by necessary implication. 73 AM.

JUR.2D *Statutes* § 350 (1974); *see also* 26 I.L.E. *Statutes* § 193 (1960).

The Third District of this court recently determined that IC 31–1–11.5–2 is a remedial statute and deserves retroactive application. *Sable v. Sable* (1987), Ind.App., 506 N.E.2d 495 (Buchanan, J., dissenting). The supreme court did not have the opportunity to review the decision in *Sable* as neither party sought transfer.

Our view of the circumstances surrounding the statute and its legislative history is that it is not remedial, but rather creates a new obligation. Currently IC 31–1–11.5–2(d) defines property to include:

"(1) a present right to withdraw pension or retirement benefits;

(2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment, or that are vested, as that term is defined in Section 411 of the Internal Revenue Code, but that are payable after the dissolution of marriage; and

(3) the right to receive disposable retired or retainer pay, as defined in 10 U.S.C. 1408(a), acquired during the marriage, that is or may be payable after the dissolution of marriage."

Prior to the enactment of this statute, the Indiana Legislature and courts maintained that the right to payments under a pension plan was not a marital asset subject to division. *Koenes v. Koenes* (1985), Ind. App., 478 N.E.2d 1241. *Koenes* explained the prior treatment of pension and retirement benefits under Indiana law:

"Ind.Code § 31–1–11.5–2(d) (1982) defined marital property as 'all the assets of either party or both parties, including a present right to withdraw pension or retirement benefits.' This statutory language constituted legislative adoption of prior case law requiring a present vested interest in property before subjecting it to distribution. *Sadler v. Sadler*, (1981) Ind.App., 428 N.E.2d 1305, 1307. Although a trial court must consider a spouse's pension plan as a factor in dividing marital property, the actual award under the property settlement must consist of assets in which the parties have a present vested interest. *Hiscox v. Hiscox*, (1979) 179 Ind.App. 378, 380, 385 N.E.2d 1166, 1167."

*Id.* at 1242. While *Koenes* observed that the 1985 General Assembly had amended IC 31–1–11.5–2(d), the First District concluded the amended section had no retroactive effect. *Id.* at 1242, n. 2.

Certainly, the legislature was aware that its original definition of property would exclude some retirement benefits from the marital pot. The legislature's recent broadening of the definition of marital property is a substantial change in policy, probably done in response to the Former Spouses' Protection Act, codified at 10 U.S.C. § 1408 (1982) (the Act). While the Act permits each state to consider military retirement benefits as marital property, the final decision concerning the treatment of military retirement funds remains with the states. *Id.* In *McCarty v. McCarty* (1981), 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589, the Court explained that federal law precluded a state court from dividing military benefits in a dissolution proceeding. The Act *returned* the power to each state to deal with military pensions in the manner in which it had previously treated them or choses to treat them in the future. *See Koenes, supra.*

While many other jurisdictions have retroactively applied similar statutes, such application merely provides for dividing property in accordance with state law as it existed before *McCarty*, i.e., prior to *McCarty*, these jurisdictions had determined it permissible to divide military retirement pay. *E.g., Edsall v. Superior Court* (1984), 143 Ariz. 240, 693 P.2d 895; *Smith v. Smith* (1983), Del.Fam.Ct., 458 A.2d 711; *Castiglioni v. Castiglioni* (1984), 192 N.J.Super. 594, 471 A.2d 809; *Coppenhaver v. Coppenhaver* (1984), 101 N.M. 105, 678 P.2d 1180; *Thorpe v. Thorpe* (1985), 123 Wis.2d 424, 367 N.W.2d 233. *See generally* Annot., 94 A.L.R.3d 176 (Supp.1987). Retroactive application in these states seems appropriate to remove the harsh effects of *McCarty* because no

new right or obligation was created from pre-*McCarty* law.

However, in Indiana and North Carolina, prior existing law precluded division of military retirement benefits which were payable after the dissolution of marriage. *See* IC 31-1-11.5-2(d) (1982); N.C.GEN.STAT. § 50-20(b) (1983). A statutory change allowing a spouse distribution, in part, of this asset creates a new right to property that was never divisible before, and the amendment should be applied prospectively only. *Accord Morris v. Morris* (1986), 79 N.C. App. 386, 339 S.E.2d 424; *Johnson v. Johnson* (1985), 74 N.C.App. 593, 328 S.E.2d 876.

For the foregoing reasons, we reverse the trial court's judgment awarding forty percent of William's military pension to Joanne.

SULLIVAN, J., concurs with separate opinion.

RATLIFF, C.J., dissents with separate opinion.

SULLIVAN, Judge, concurring.

I concur in the determination that I.C. 31-1-11.5-2(d) is not applicable to the distribution of marital assets in this case.

The parties to this appeal concede that I.C. 31-1-11.5-2(d)(3) includes pension benefits acquired during marriage but that are or may be payable after dissolution of the marriage. That interpretation of the statutory language may or may not be accurate. But whether or not the statute includes such future pension payments is not determinative in this appeal. The question before us is whether the statute changes the law so as to reopen the marital pot and to include therein assets which were not included at the time the pot lid was closed.

Here, the assets included or includable in the marital estate became fixed on October 10, 1984. The amendment in question became effective on September 1, 1985. In this regard, I am not persuaded by the dictum in *Sable v. Sable* (1987) 3d Dist.Ind. App., 506 N.E.2d 495, 497, which observed that the wife might have dismissed her petition and refiled it after the effective date of the amendment and that "[h]ad she done so the amendment would clearly apply even though the separation date remained the same as before."

If such instance were to occur and the dismissal were occasioned solely by an effort to increase the size of the marital pot, I would assume that the trial court and/or this court might well consider the earlier "final separation" date as the controlling date, or recognize an exception to the premise that the date of filing of the petition is necessarily the date of final separation. In any event, I would not assume such a subterfuge would prove successful.

Furthermore, the fact remains that neither Mrs. Sable nor Mrs. Arthur in the case before us attempted to gain application of the 1985 amendment by dismissing and refiling. I agree with Judge Buchanan's conclusion that in the case before us, the 1985 Act was not applicable. The marital estate was fixed as of October 10, 1984, the date of the filing of the dissolution petition.

Had the General Assembly wished, it could have amended I.C. 31-1-11.5-11 (Burns Code Ed.Repl.1987) which provides that the court must divide the property of the parties or either of them acquired prior to final separation and which defines "final separation" as the date of the filing of the petition for dissolution. It did not choose to do so. One must assume, therefore, that the General Assembly intended that, insofar as future pension and retirement benefits were to be included in the marital estate, that determination must be made as of the date of the filing of the petition. Since such future rights were not includable until September 1, 1986, they were not properly includable in the case before us.

RATLIFF, Chief Judge, dissenting.

In *Sable v. Sable* (1987), Ind.App., 506 N.E.2d 495 (Buchanan, J., dissenting) this court court construed the 1985 amendment to Indiana Code section 31-1-11.5-2 and

held it to be remedial rather than creating new substantive rights. Being remedial in nature, the amendment properly was applied retrospectively. I believe *Sable* properly construed the effect and nature of the amendment. It is remedial and should be applied retrospectively. Therefore, this case should be governed by *Sable* and the judgment should be affirmed.

For the foregoing reasons, I dissent.